IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) ) | Civil Action No. XXXXXXXXX |
| Plaintiff, | ) ) | 3:25-cv-9644-SAL |
| vs. | ) ) | |
| UTILITY SERVICE CONTRACTORS, INC.; CHRISTOPHER BRYAN EDWARDS, *individually* and as an *Officer of Utility Service Contractors, Inc.*; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and MICHAEL BURTLE, *individually*, as *Personal Representative of the Estate of Virginia Burtle*, and as *Parent and Guardian to J.B., a minor, and N.B., a minor*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| Defendants. | ) ) ) | |

Plaintiff, Selective Insurance Company of America ("Selective"), sets forth its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, against the above-captioned Defendants Utility Service Contractors, Inc. ("USC"); Christopher Bryan Edwards, individually and as an Officer of Utility Service Contractors, Inc. ("Defendant Edwards"); State Farm Mutual Automobile Insurance Company ("State Farm"); and Michael Burtle, individually, as Personal Representative of the Estate of Virginia Burtle, and as Parent and Guardian to J.B., a minor, and N.B., a minor ("Mr. Burtle") (collectively, "Defendants"). In support, Selective states as follows:

1

## NATURE OF THE ACTION

1.      This is an insurance coverage declaratory judgment action brought pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure.

2.      Selective seeks a judgment declaring that it has no duty to defend and/or indemnify any party against claims arising from a motor vehicle accident which occurred on October 19, 2024, in Lexington County, on Route 6, South Lake Drive, between Defendant Edwards and Virginia Burtle ("Subject Incident"), including without limitation C/A No. 2025-CP-40-01366, brought by Mr. Burtle on behalf of the Estate of Virginia Burtle, and C/A No. 2025-CP-40-01368, brought by Mr. Burtle on behalf of his minor children.

3.      Selective intends to show that all coverage for indemnity or a defense has been forfeited by USC relative to the Subject Incident based on the terms, conditions, declarations, and duties of policy number S2644748 ("Selective Policy"), specifically the notice requirements, and that USC's failure to comply with these notice requirements constitutes a material breach resulting in substantial prejudice to Selective.

4.      Selective further intends to show that the Selective Policy does not apply in whole or in part because (1) Defendants removed Defendant Edwards' vehicle from the Selective Policy and (2) Defendant Edwards was not acting in the course and scope of his employment with USC.

5.      The Selective Policy was issued on March 14, 2024, with an effective date of March 1, 2024, a true and accurate copy of which is attached hereto as **Exhibit 1**.

6.      Additionally, Selective seeks a judgment declaring that the insurance policy between State Farm and Defendant Edwards, policy number 759 7609-C25-40 ("State Farm Policy"), is the primary insurance policy covering the Subject Incident and all claims arising

therefrom, and that State Farm is under a primary duty to defend and indemnify USC in C/A No. 2025-CP-40-01366 and C/A No. 2025-CP-40-01368.

7.      Selective intends to show that State Farm was on notice of the Subject Incident and the allegations of vicarious liability made against USC based on the actions of Defendant Edwards, State Farm's insured; these vicarious liability claims are covered under State Farm's policy, and therefore, State Farm has a duty to defend and indemnify USC which, to date, it has not fulfilled. Selective further intends to show that State Farm's coverage, and therefore its duty to defend USC, was and is primary.

8.       The State Farm Policy was issued and effective on September 25, 2025, with Christopher Bryan and Tammy Edwards as the named insureds on the policy, a true and accurate copy of which is attached hereto as **Exhibit 2**.  Moreover, the State Farm Policy lists the vehicle Defendant Edwards was driving when the Subject Incident occurred as an insured vehicle.

## PARTIES AND JURISDICTION

9.      Selective is a corporation organized and existing under the laws of New Jersey and is authorized to conduct business in South Carolina.  Selective's principal place of business is in Branchville, New Jersey.

10.      USC is a corporation organized and existing under the laws of South Carolina with its principal place of business located in South Carolina.

11.      Defendant Edwards is a citizen and resident of South Carolina.

12.      State Farm is a corporation organized and existing under the laws of Illinois with its principal place of business in Illinois.

13.      Mr. Burtle is a citizen and resident of South Carolina.

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (c), based on complete diversity of citizenship between the parties and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

15.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 2201 because this case presents an actual case or controversy regarding insurance coverage, and the resolution of such controversy is necessary to inform the parties of their respective rights and obligations under the applicable insurance policies.

16.     Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(2) because the Subject Incident occurred in Richland County, South Carolina.

17.     Undersigned counsel endorses that venue is proper in the Columbia Division under either Local Rule 3.01(A)(1) or (A)(2).

## FACTUAL ALLEGATIONS

### A.     September of 2024

18.     On or about September 10, 2024, USC's Chief Operating Officer, Defendant Edwards, was involved in a minor automobile accident which he did not report to USC's human resources or Selective.

19.     On or about September 13, 2024, Defendant Edwards was informed by USC that he was no longer permitted to drive USC-owned vehicles and that he would need to provide his own transportation and insurance.

20.     On September 16, 2024, USC reported the minor motor vehicle accident to Selective, only after Selective's representatives contacted USC for information about potential claims.

21.     On or about September 20, 2024, USC sold Defendant Edwards one of the company vehicles, a 2019 Dodge Ram 1500 ("Subject Vehicle").  At that time, the Subject Vehicle was listed as a covered auto on the Selective Policy.

22.     On or about September 25, 2024, Defendant Edwards took out the State Farm Policy on the Subject Vehicle.

23.     As discussed below, the Subject Vehicle was ultimately removed from the Selective Policy by USC, effective on September 20, 2024.

**B.    October of 2024**

24.     Title to the Subject Vehicle could not be located, and a replacement title was, therefore, requested from the South Carolina Department of Motor Vehicles ("SCDMV") and paid for on October 11, 2024.

25.     On Saturday, October 19, 2024, at approximately 9:00 a.m., Defendant Edwards was involved in the Subject Incident, a serious motor vehicle accident on Route 6, South Lake Drive, in Lexington County, South Carolina, while driving the Subject Vehicle.

26.     Defendant Edwards was acting in his personal capacity at the time of the Subject Incident and was not acting within the course and scope of his employment with or as an agent of USC.

27.     The other vehicle involved in the Subject Incident was operated by Virginia Burtle ("Mrs. Burtle"), with her two minor children riding in the vehicle as passengers (collectively, "the Burtles").

28.     Upon information and belief, Defendant Edwards crossed the center line resulting in a head-on collision with the Burtles' vehicle.  Mrs. Burtle died as a result of the Subject Incident, and her minor children were injured.

29.     Despite the fact that its Chief Operating Officer, Defendant Edwards, was involved in the Subject Incident, a serious motor vehicle collision resulting in death, USC failed to report the Subject Incident to Selective in October of 2024, nor did Selective receive notice in any way.

30.     Upon information and belief, State Farm received notice of the Subject Incident on or about October 19, 2024.

**C.     November of 2024**

31.     On November 13, 2024, USC received the replacement title to the Subject Vehicle from the DMV.

32.     Nevertheless, USC failed to report the Subject Incident to Selective in November of 2024, nor did Selective receive notice in any way.

**D.     December of 2024 through January of 2025**

33.     On December 9, 2024, a lawsuit was filed on behalf of the Estate of Mrs. Burtle against Defendant Edwards in the Lexington County Court of Common Pleas ("Lexington County Lawsuit").  The Lexington County Lawsuit was served on Defendant Edwards on December 23, 2024.

34.     USC was not named as a defendant in the Lexington County Lawsuit.

35.     Upon information and belief, State Farm immediately received notice of the Lexington County Lawsuit and retained defense counsel for Defendant Edwards.   Upon information and belief, State Farm did not retain defense counsel for USC at this time.

36.     USC failed to report the Subject Incident or the Lexington County Lawsuit to Selective in December of 2024, nor did Selective receive notice in any way.

37.     Meanwhile, in December of 2024 and January of 2025, USC was seeking renewal of the Selective Policy.  Due in large part to USC's failure to timely report the September 2024

incident to Selective, there was doubt as to whether Selective would offer to renew USC's umbrella coverage for the 2025-2026 policy year.

38.     In communications surrounding renewal of the Selective Policy, agents of USC informed Selective that it had taken steps to resolve the issues of concern with regards to the renewal of the policy, which included removal of Defendant Edwards from the drivers schedule on the Selective Policy.

39.     Despite the fact that its Chief Operating Officer, Defendant Edwards, was involved in the Subject Incident and named in the Lexington County Lawsuit, USC failed to report the Subject Incident or the Lexington County Lawsuit to Selective in January of 2025, nor did Selective receive notice in any way.

**E.     February of 2025**

40.     USC was served with a subpoena in connection with the Lexington County Lawsuit; this subpoena requested documents related to USC's insurance policies and sought to determine whether USC owned the Subject Vehicle.

41.     This subpoena provided notice to USC that attorneys representing Mrs. Burtle's Estate were seeking to assert a claim against USC related to the Subject Incident.  USC knew or reasonably should have known at this moment in time that litigation was likely to be filed against USC resulting from the Subject Incident.

42.     In response to the subpoena, USC retained personal counsel, Paul V. Degenhart and Mary Nell Degenhart.

43.     Yet, USC failed to report both the subpoena in the Lexington County Lawsuit, and the Subject Incident to Selective, despite being on notice that the plaintiffs in the underlying tort lawsuits were "sniffing around" USC and exploring avenues to bring USC into the litigation.

44.     On February 7, 2025, USC's personal counsel filed a Motion to Quash the subpoena on behalf of USC's registered agent, Kerri Edwards, in the Lexington County Lawsuit.

45.     On February 10, 2025, the title to the Subject Vehicle was formally transferred from USC to Defendant Edwards.

46.     On February 14, 2025, the Lexington County Lawsuit was voluntarily dismissed without prejudice.

47.     On February 17, 2025, an Answer was filed on behalf of Defendant Edwards in the Lexington County Lawsuit.

48.     On or about February 25, 2025, USC submitted to Selective documents detailing the sale of the Subject Vehicle to Defendant Edwards and requested the Subject Vehicle be removed from the Selective Policy's business automobile schedule—backdated to the September 20, 2024, date of sale.  Selective complied with USC's request, removed the Subject Vehicle, and returned approximately $1,100 in insurance premium by way of credit as a result of the Subject Vehicle's removal from the Selective Policy.

49.     Despite affirmatively reaching out to Selective when it suited USC's purposes to do so (to remove the Subject Vehicle in exchange for a premium reduction), USC yet again failed to inform Selective of the Subject Incident when it asked Selective to return premium to USC.

50.     On February 28, 2025—just days after USC contacted Selective for a premium refund without telling Selective about the Subject Accident—two separate lawsuits were filed in the Richland County Court of Common Pleas against both Defendant Edwards and USC: the first was brought on behalf of the Estate of Mrs. Burtle (C/A No. 2025-CP-40-01366) and the second was brought on behalf of the Burtles' minor children (C/A No. 2025-CP-40-01368) (collectively, "Richland County Lawsuits").

51.     The claims in the Richland County Lawsuits against Defendant Edwards were virtually identical to those claims pursued in the Lexington County Lawsuit.

52.     The Richland County Lawsuits brought causes of action for negligence and wrongful death against both Defendant Edwards and USC.  The claims against USC were based on incorrect allegations of vicarious liability for the actions of Defendant Edwards and ownership of the Subject Vehicle, which was insured by State Farm and owned by Defendant Edwards.

53.     Despite the fact that its Chief Operating Officer, Defendant Edwards, was involved in the Subject Incident and named in the Lexington County Lawsuit and the Richland County Lawsuits, USC once again failed to report the Subject Incident, the Lexington County Lawsuit, or the Richland County Lawsuits to Selective in February of 2025, nor did Selective receive notice in any way.

**F.     March of 2025**

54.     On March 11, 2025, State Farm, as underinsured motorist carrier, accepted service of the Richland County Lawsuits.

55.     On March 12, 2025, USC was served with both of the Richland County Lawsuits via personal service on USC's registered agent, Kerri Edwards.

56.     On March 14, 2025, defense counsel retained by State Farm accepted service of the Richland County Lawsuits on behalf of Defendant Edwards.

57.     Despite the fact that its Chief Operating Officer, Defendant Edwards, was involved in the Subject Incident and named in the Lexington County Lawsuit and the Richland County Lawsuits, USC failed to report the Subject Incident, the Lexington County Lawsuit, or the Richland County Lawsuits to Selective in March of 2025, nor did Selective receive notice in any way.

### G.     April of 2025 to Present

58.     USC waited until April 2, 2025, to meet with its insurance agent regarding the Richland County Lawsuits.

59.     Selective first received notice of the Subject Incident, the Lexington County Lawsuit, and the Richland County Lawsuits on April 3, 2024, via an email from USC's insurance agent.  Only eight (8) days remained before the deadline to file an answer to both of the Richland County Lawsuits.

60.     Prior to April 3, 2025, Selective did not receive actual or constructive notice of the Subject Incident, the Lexington County Lawsuit, or the Richland County Lawsuits in any way.

61.     The email from USC's insurance agent was sent to an email address that Selective does not use for claims intake.  One of Selective's employees then attempted to transfer the information in the email to a priority mailbox for new claims.  During that process, the claims were inadvertently and mistakenly marked as "resolved."

62.     On Friday, April 18, 2025, USC's insurance agent followed up for the first time on the status of the Richland County Lawsuits.  The mistake was discovered and corrected, and the claims were immediately set up, assigned to an adjuster, and referred to counsel to answer the Complaints.

63.     On Monday, April 21, 2025, defense counsel was retained by Selective on behalf of USC.  USC's defense counsel immediately filed Answers and Motions to Set Aside Default in both of the Richland County Lawsuits.

64.     Defense counsel retained by State Farm filed a timely Answer to both of the Richland County Lawsuits on April 18, 2025, on behalf of Defendant Edwards only.

65.     As a result, State Farm failed to honor is obligations under the State Farm Policy by failing to provide a defense for USC.

66.     Default was entered against USC in both of the Richland County Lawsuits: on April 21, 2025, in C/A No. 2025-CP-40-01366 and on May 12, 2025, in C/A No. 2025-CP-40-01368. The orders entering default also referred both of the Richland County Lawsuits to William C. Lewis, as special referee.

67.     Selective and the defense counsel retained by Selective continued to pursue relief from entry of default on behalf USC.

68.     A representative from Selective provided an affidavit, dated June 16, 2025, detailing why the Richland County Lawsuits were not properly set up in Selective's system on April 3, 2025 ("Selective Affidavit").

69.     On June 19, 2025, defense counsel retained by Selective filed a Memorandum in Support of the Motion to Set Aside Entry of Default, along with affidavits from representatives of USC and the Selective Affidavit.

70.     Counsel for the Burtles filed a Memorandum in Opposition to the Motion to Set Aside Entry of Default on June 23, 2025, and an Amended Memorandum in Opposition to the Motion to Set Aside Entry of Default on June 24, 2025.

71.     On June 25, 2025, defense counsel retained by Selective filed a Reply to Plaintiff's Memorandum in Opposition to the Motion to Set Aside Entry of Default on behalf of USC.

72.     On June 26, 2025, a hearing was conducted on the Motion to Set Aside Entry of Default before special referee, Will Lewis.

73.    On July 2, 2025, defense counsel retained by Selective filed Supplemental Briefing in Support of the Motion to Set Aside Entry of Default on behalf of USC, along with an affidavit from one of USC's personal attorneys, Mary Nell Degenhart.

74.    On July 3, 2025, defense counsel retained by Selective filed an affidavit from the other of USC's personal attorneys, Paul V. Degenhart.

75.    The two (2) affidavits from USC's personal attorneys established that counsel for the Burtles was made aware that they represented USC during the Lexington County Lawsuit and would have accepted service of the Complaints from the Richland County Lawsuits if asked.

76.    The Motions to Set Aside Entry of Default in both of the Richland County Lawsuits were denied on July 17, 2025.

77.    On July 25, 2025, Defense counsel retained by Selective timely filed Motions to Reconsider the Order Denying the Motions to Set Aside Entry of Default on behalf of USC in the Richland County Lawsuits.

78.    On July 28, 2025, Selective sent a Reservation of Rights letter to USC.

79.    USC's failure to promptly notify Selective of the Subject Incident, the Lexington County Lawsuit, and the Richland County Lawsuits constitutes a material breach of its duties and obligations under the Selective Policy, including but not limited to the following duties listed under the Business Auto Conditions contained in Section IV of Form CA 00 01 10 13:

      a.    Give Selective "prompt notice" of any accident, claim, suit, or loss;

      b.    "Immediately send [Selective] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or suit"; and

      c.    "Cooperate with [Selective] in the investigation or settlement of the claim or defense against the suit." (Ex.1, at p. 266).

80.     Selective was substantially prejudiced by the failure of USC and Defendant Edwards, as an officer of USC, to report the Subject Incident until more than five (5) months later.

81.     Due to USC's failure to report the Subject Incident or provide notice of the related claims, including the Lexington County Lawsuit and the Richland County Lawsuits, Selective suffered substantial prejudice in the following ways:

     a.   No opportunity to interview witnesses;

     b.   No opportunity to investigate the Subject Incident;

     c.   No opportunity access or download vehicle "black box" data;

     d.   No opportunity to settle claims pre-suit;

     e.   No opportunity to make a determination on coverage;

     f.   No opportunity to evaluate whether there was a duty to defend USC under the Selective Policy; and

     g.   Lost ability to present meritorious defenses on USC's behalf.

82.     If USC or Defendant Edwards, in his capacity as an officer of USC, had provided notice to Selective of the Subject Incident in October 2024, November 2024, December 2024, January 2025, February 2025, or at any time prior to the Richland County Lawsuits being served on USC, Selective could have immediately retained defense counsel, begun formulating a defense, and prevented the Richland County Lawsuits from going into default.

## COUNT I – DECLARATORY JUDGMENT
### (No Duty to Indemnify Utility Services Contractors, Inc.)

83.     Selective incorporates by reference each of the foregoing paragraphs as if restated verbatim herein.

84.     Selective seeks a declaration from this Court that it is not obligated to indemnify USC in the Richland County Lawsuits or any claim arising out of the Subject Incident.

85.    The Subject Incident is not covered by the terms of the Selective Policy.

86.    The Subject Vehicle was not owned by USC at the time of the Subject Incident. Instead, it was personally owned by Defendant Edwards.

87.    The Subject Vehicle was removed from the business automobile schedule in the Selective Policy at USC's direction.

88.    Chrisopher Bryan Edwards was removed from the drivers schedule in the Selective Policy.  In fact, he was informed by USC in September of 2024 that he was no longer authorized to drive USC's vehicles and had to obtain his own automobile coverage and transportation.

89.    Defendant Edwards was not acting within the course and scope of his employment at the time of the Subject Incident.

90.    Because Defendant Edwards was driving his personal vehicle on his personal time at the time of the Subject Incident, Selective has no duty to indemnify USC under the Selective Policy.

91.    As an additional basis for denying coverage, the failure of USC and Defendant Edwards, as an officer of USC, to report the Subject Incident constitutes a material breach of the Selective Policy and its applicable notice clauses.  This breach resulted in substantial prejudice to Selective.

92.    Due to USC's material breach of the Selective Policy conditions, Selective is under no duty to indemnify USC under the Selective Policy.

## COUNT II – DECLARATORY JUDGMENT
### (No Duty to Defend Utility Service Contractors, Inc.)

93.    Selective incorporates by reference each of the foregoing paragraphs as if restated verbatim herein.

94.     Selective seeks a declaration from this Court that Selective owes no duty to defend USC in the Richland County Lawsuits or any other claim arising out of the Subject Incident.

95.     The terms of the Selective Policy are clear and unambiguous.

96.     As a condition precedent of Selective providing coverage under the Business Auto Coverage of the Selective Policy, USC and Defendant Edwards, as an officer of USC, were obligated to fully comply with the following duties listed under the Business Auto Conditions contained in Section IV of Form CA 00 01 10 13 (as modified by the ElitePac® Commercial Automobile Extension Form CA 78 09 04 23) once any of USC's executive officers were aware of the Subject Incident, a claim, or a lawsuit:

   a.   Give Selective "prompt notice" of any accident, claim, suit, or loss;

   b.   "Immediately send [Selective] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or suit"; and

   c.    "Cooperate with [Selective] in the investigation or settlement of the claim or defense against the suit";

   d.   Among other conditions clearly and unambiguously described in the Selective Policy.    (Ex.1, at p. 266).

97.     Defendant Edwards, as the Chief Operating Officer of USC, is an executive officer of USC and had knowledge of the Subject Incident from the date of occurrence.  Compliance with the above listed duties was, therefore, triggered on October 19, 2024.

98.     As a condition precedent of Selective providing coverage under the Commercial Umbrella Liability Coverage of the Selective Policy, USC and Defendant Edwards, as an executive officer of USC, were obligated to fully comply with the following duties listed under the Umbrella Conditions contained in Section IV of Form CXL 4 04 03:

   a.   Ensure that Selective was "notified as soon as practicable of an occurrence or an offense which may result in a claim";

b.  "[S]ee to it that [Selective] receive written notice of the claim or suit as soon as practicable";

c.  "Immediately send [Selective] copies of any demands, notices, summonses or legal papers received in connection with a claim or suit";

d.  "Cooperate with [Selective] in the investigation or settlement of the claim or defense against the suit"; and

e.  "Assist [Selective] . . . in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."  (*Id*. at 401-402).

99.  USC and Defendant Edwards, as an officer of USC, breached these conditions in numerous ways, including but not limited to the following:

a.  Failing to provide notice of the Subject Incident for a period of more than five months;

b.  Failing to provide notice of the Lexington County Lawsuit until after the case was dismissed;

c.  Failing to forward the subpoena served upon it in the Lexington County Lawsuit;

d.  Failing to provide notice of or forward the Complaints from the Richland County Lawsuits until only eight days remained before the deadline to respond;

e.  Preventing Selective from having the opportunity to investigate the Subject Incident by failing to provide notice;

f.  Preventing Selective's ability to present meritorious defenses on USC's behalf; and

g.  Thwarting Selective's right to identify and pursue other entities or persons that may be liable for the Subject Incident.

100.  The failures of USC and Defendant Edwards, as an officer of USC, to comply with the policy conditions constitute material breaches of the Selective Policy.

101.  Selective was substantially prejudiced by USC's breach of the conditions of the Selective Policy.

102.   As a result of USC's material breach of policy conditions and the ensuing substantial prejudice to Selective, Selective is under no duty to defend USC in the Richland County Lawsuits or any other claim arising from the Subject Incident.

## COUNT III – DECLARATORY JUDGMENT
### (State Farm is Primary Coverage on Subject Vehicle and Has Primary Duty to Defend)

103.   Selective incorporates by reference each of the foregoing paragraphs as if restated verbatim herein.

104.   Selective seeks a declaration from this Court that (1) the State Farm Policy is the primary coverage related to the Subject Incident and all claims arising therefrom, including without limitation the Richland County Lawsuits; (2) that the Selective Policy's Commercial Auto Coverage Part is, therefore, only excess coverage; and (3) that State Farm's duty to defend is primary.

105.   The State Farm Policy is clear and unambiguous.

106.   The Subject Vehicle was listed on the State Farm Policy at the time of the Subject Incident.

107.   Defendant Edwards was listed as a named insured on the State Farm Policy at the time of the Subject Incident.

108.   USC sold the Subject Vehicle to Defendant Edwards on September 20, 2024, as evidenced by a bill of sale.

109.   Prior to the Subject Incident, USC informed Defendant Edwards that he was no longer authorized to drive company vehicles and that he needed to obtain his own transportation and insurance.

110.    Effective September 20, 2024, the Subject Vehicle was removed from the Selective Policy at the request of USC.  This request was made on or about February 25, 2025, and USC explicitly requested that the removal be backdated to the date of sale.

111.    Defendant Edwards was removed from the drivers schedule of the Selective Policy.

112.    Form 6128DP of the State Farm Policy extends the definition of an "Insured" under the policy to cover USC and the allegations against it in the Richland County Lawsuits.  The State Farm Policy states as follows: "Insured means any other person or organization vicariously liable for the use of a vehicle by an insured . . . but only for such vicarious liability . . . if [(a)] neither owned by, nor hired by, that other person or organization; and [(b)] neither available for, nor being used for carrying persons for a charge."  (Ex.2, at p. 23).

113.    Form 9840A of the State Farm Policy, "**LIABILITY COVERAGE**", **If Other Liability Coverage Applies**, Item 2, states in relevant part: "The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of ***your car*** or a ***trailer*** attached to it." (Ex.2, at p. 5) (emphasis added).

114.    In contrast, the Selective Policy's **SECTION IV – BUSINESS AUTO CONDITIONS**, Paragraph B.5.a, states in pertinent part: "Other Insurance. a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance[.]"  (Ex.1, at p. 267) (emphasis added).

115.    The Richland County Lawsuits allege that Defendant Edwards was operating the Subject Vehicle within the course and scope of his employment by USC, and, thus, that USC is vicariously liable for Edwards's alleged misconduct. If the plaintiffs in those lawsuits later prove those allegations are true, USC is an "insured" under State Farm's Policy for any vicarious liability

it has due to Edwards's acts or omissions, because Edwards is undisputedly an "insured" under State Farm's Policy.

116.    The allegations in the Richland County Lawsuits thus triggered State Farm's duty to defend USC under the State Farm Policy. State Farm had, and continues to have, a duty to defend USC against the Richland County Lawsuits, even if the allegations that Defendant Edwards was acting within the course and scope of his employment by USC are ultimately determined to be false.

117.    Further, since State Farm's policy provides that its coverage is primary given the facts presented, while Selective's policy is excess, State Farm's duty to defend USC is also primary.  State Farm's policy is primary because its named insured owned the Subject Vehicle and scheduled it on the State Farm Policy.  Selective's policy is excess, to the extent its coverage even applies at all, because the Subject Vehicle was not owned by Selective's insured (USC).

118.    As detailed above, on March 11, 2025, State Farm accepted service of the Richland County Lawsuits in its capacity as a UM/UIM carrier.  Three days later, defense counsel hired by State Farm accepted service of those lawsuits on behalf of Defendant Edwards.  State Farm has had actual notice of the Richland County Lawsuits' allegations for many months and, upon information and belief, has been on notice of the Subject Accident longer than that.

119.    Yet, to date, State Farm has taken no action whatsoever to fulfill its duty to defend USC in the Richland County Lawsuits. Having been on notice of the Richland County Lawsuits since at least March 11, 2025, State Farm could easily have retained separate counsel to represent USC and respond to those lawsuits—as evidenced by the fact that State Farm contemporaneously did precisely that for Mr. Edwards.

120.    State Farm has breached, and continues to breach, its duty to defend USC in the Richland County Lawsuits.

121.    Accordingly, the State Farm Policy's coverage is primary for all claims arising from the Subject Incident, and State Farm is under an obligation to defend and indemnify USC for said claims on a primary basis, including without limitation the Richland County Lawsuits.

## COUNT IV – DECLARATORY JUDGMENT
### (No Duty to Defend or Indemnify Defendant Edwards)

122.    Selective incorporates by reference each of the foregoing paragraphs as if restated verbatim herein.

123.    Selective seeks a declaration from this Court that it is not obligated to defend or indemnify Defendant Edwards in the Richland County Lawsuits or any claim arising out of the Subject Incident.

124.    The Subject Vehicle was not owned by USC at the time of the Subject Incident. Instead, it was personally owned by Defendant Edwards.

125.    The Subject Vehicle was removed from the business automobile schedule in the Selective Policy at USC's direction.

126.    Chrisopher Bryan Edwards was removed from the drivers schedule in the Selective Policy, and he was informed by USC in September of 2024 that he was no longer authorized to drive USC's vehicles and had to obtain his own automobile coverage and transportation.

127.    Defendant Edwards was not acting within the course and scope of his employment at the time of the Subject Incident.

128.    Because Defendant Edwards was driving his personal vehicle on his personal time at the time of the Subject Incident, the coverage afforded by the Selective Policy does not extend to Defendant Edwards.

129.    Specifically, Defendant Edwards does not qualify as an "insured" under any of the provisions of the Selective Policy, including without limitation:

       a.    The Business Auto Coverage Form contained in form number CA 00 01 10 13, Section II.A.1.;

       b.    The ElitePac® Commercial Auto Extension contained in form number CA 78 09 04 23; and

       c.    The Commercial Umbrella Liability Coverage Part.

130.    As an additional basis for the relief sought in Count IV, the failure of USC and Defendant Edwards, as an officer of USC, to report the Subject Incident constitutes a material breach of the Selective Policy and its applicable notice clauses.  This breach resulted in substantial prejudice to Selective.

131.    Due to the material breaches of the Selective Policy conditions, Selective is under no duty to defend or indemnify Defendant Edwards pursuant to the Selective Policy.

## COUNT V – DECLARATORY JUDGMENT
**(In the Alternative to Count IV – Coverage to Defendant Edwards is Limited to the ElitePac® Commercial Auto Extension)**

132.    Selective incorporates by reference each of the foregoing paragraphs as if restated verbatim herein.

133.    In the alternative to the relief sought in Count IV, if the Court determines that the Subject Vehicle is an "Owned Auto" under the terms of the Selective Policy, Selective seeks a determination that the only available coverage stems from the ElitePac® Commercial Auto Extension contained in form number CA 78 09 04 23.

134.    The ElitePac® Commercial Auto Extension extends the Business Auto Coverage in specific circumstances.

135.    Section B. of the ElitePac® Commercial Auto Extension provides that "[a]n employee who is the owner of a specifically described auto on the Declarations page" qualifies as an "insured" under the Selective Policy if the employee-owned auto is used:

a.  Without USC's permission;

b.  Outside the scope of any policies and procedures USC has for acceptable vehicle usage;

c.  For any purposes other than the conduct of USC's business; or

d.  By anyone other than the employee who owns the auto, except another employee.

136.    If these circumstances are met, the Business Auto Coverage applies but is limited to the higher of:

a.  $250,000; or

b.  The compulsory or financial responsibility law limits where the auto is licensed and principally garaged.

137.    Here, Defendant Edwards was acting outside the course and scope of his employment and did not have permission from USC to drive vehicles covered by the Selective Policy.

138.    Accordingly, if the Subject Vehicle is covered by the Selective Policy, the only coverage that could extend to Defendant Edwards is provided by the ElitePac® Commercial Auto Extension, which limits coverage to a maximum of $250,000.

139.    Further, the ElitePac®'s Commercial Auto Extension's limitation of coverage to $250,000 is a "sub-limit" as defined in the Policy's Commercial Umbrella Liability Coverage Part's Form CXL 510 01 23. Per the terms of the Commercial Umbrella Liability Coverage Part's Limits of Insurance, Item G, its coverage does not apply when the applicable limit of an underlying insurance policy is a sub-limit.

140.    As such, if Defendant Edwards is found to have the $250,000 in liability coverage available to him under the ElitePac® Commercial Auto Extension as described above, he does not have any coverage under the Policy's Commercial Umbrella Liability Coverage Part.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for a judgment from the Court declaring that there is no coverage owed under the Selective Policy for USC as related to the Subject Incident and any claims arising therefrom; that the State Farm Policy is primary coverage related to the Subject Incident; and for any further rights and obligations of the respective parties hereto as this Court deems just and proper, as well as all other relief which may be entitled and justified.

WILLIAMS MULLEN

By: s/ William P. DuBose, IV
Richard H. Willis (Fed. Bar No.: 4700)
rwillis@williamsmullen.com
John G. Tamasitis (Fed. Bar No.: 11995)
jtamasitis@williamsmullen.com
William P. DuBose, IV (Fed. Bar No.: 14211)
wdubose@williamsmullen.com
1230 Main Street, Suite 330
Columbia, South Carolina 29201
(T): 803-567-4600
(F): 803-567-4601

*Attorneys for Plaintiff Selective Insurance
Company of America*

August 4, 2025

Columbia, South Carolina